RAMÓN MUÑOZ, Petitioner and Appellee, *v.* ALEJA TORRES and LEONOR ROCHE, Respondents and Appellant the former.

No. 11059. Argued November 23, 1953.—Decided December 8, 1953.

*Ramón G. Goyco* for appellant. *José N. Dapena Laguna* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Ramón Muñoz filed a petition for a writ of habeas corpus in the former District Court of Puerto Rico, Ponce Section, against Aleja Torres, claiming the custody of a girl, Lourdes Muñoz Roche, who is petitioner's daughter, and was five years of age at the time of the hearing of the case on May 29, 1951. Aleja Torres is the grandmother of the child. At the hearing of the case, she joined the minor's mother, Leonor Roche, as codefendant. The Ponce Court rendered judgment sustaining the petition for habeas corpus and awarding the custody of the girl to her father, the petitioner. The judgment was based on the following findings of fact:

"1. About 1945 Ramón Muñoz had sexual relations with Leonor Roche, from which a child named Lourdes was born in 1946. At her birth the plaintiff, who was stationed as a soldier in Trinidad, came especially to Puerto Rico to acknowledge her as his daughter and this he did.

"2. Since her birth, Lourdes has lived in her grandmother's house, codefendant Aleja Torres, a widow 55 years old. In June 1949, Leonor Roche left her daughter with Doña Aleja and went to the United States where she stayed until September of that year, when she returned to her mother's house in Las Parcelas of Juana Díaz, and remained ever since.

"3. Some time after her return from the United States, and at the very house of codefendant, Doña Aleja, Leonor had relations as husband and wife with policeman Santiago Ortiz Berríos, as a result of which a son was born. Leonor herself thus corroborated it.

"4. Doña Aleja has a small four-room house where Leonor and her children live, in addition to Doña Aleja, as well as Raquel Bonaparte, daughter-in-law of Doña Aleja, with her two daughters, and also two sons and a young lady, daughter of the codefendant; in all nine persons. Doña Aleja pays for the expenses of Leonor and her daughter; her two sons work and earn $24 weekly. Lourdes' shoes and clothing are bought by her mother Leonor, who receives $10 from plaintiff herein. Doña Aleja does the cooking, washing and ironing and runs the house.

"5. There is no evidence that Leonor has a job or occupation or that she receives income for any kind of work; her mother gives her some expense money. She further stated in her answer, in alleged special defenses, that she and her daughter live with Doña Aleja because she cannot live 'on the little money that petitioner sends her,' and it is Doña Aleja who defrays the needs of both.

"6. The plaintiff is a veteran of the Army, who receives a pension for physical disability and for studies. He is the owner of the house and lot where he lives. He married Lillian Muñoz five years ago and has had two daughters in his marriage. The wife testified that two years before the hearing she and her husband had spoken about bringing Lourdes to live with them and that she was willing to have her with her as her own daughter, and would be glad to have her.

"The house where plaintiff lives with his wife and two daughters has two bedrooms, a living room, dining room, kitchen and an outhouse."

In his conclusions of law the trial judge said, in part, the following:

"2. We have stated before, and our Supreme Court has repeated it, that ordinarily no one looks after a child with greater care and love than its own mother (*Rodríguez* v. *Pagán*, 67 P.R.R. 321) but in the instant case there has been no proof that the codefendant gives her daughter that maternal care and love. It is Doña Aleja, the grandmother, who provides for the expenses of the minor in question, as well as of her mother, codefendant Leonor Roche. The latter left her child with its grandmother and went to the United States where she stayed about four months and because she did not get accustomed to it she returned to her house and after some time and in the very house of the mother, where she has her own daughter, who is already three or four years old, she starts living with policeman Santiago Ortiz Berríos as husband and wife and has a child by him.

"Apparently—from what has been said—she has not only shown very little concern for the moral welfare of her daughter but for her material welfare as well, for the evidence failed to disclose that Leonor did any cooking, washing or ironing in her own mother's house who defrays her own and her daughter's needs.

"The minor's grandmother, Doña Aleja, approved her daughter's conduct by permitting her concubinage in her own house, and, undoubtedly, because of her tender and grandmotherly love, she likewise condones the unconcern of the mother towards her daughter Lourdes.

"3. Under these circumstances we believe, as a matter of law, that the conduct of the mother as well as of the daughter, codefendant herein, does not render them morally fit to continue having the custody of the minor Lourdes Muñoz. To leave this child with the mother and the grandmother under the conditions revealed by the evidence which we have set forth in the preceding findings does not insure, to the court's satisfaction, that plaintiff's daughter shall grow and develop in an atmosphere of sound morals and good habits; nor does it tend

to insure her physical and spiritual welfare; nor an education free from examples which will tend to corrupt her character.

"4. Although the fact that the father is in a better financial condition than the mother's or any third party who has the custody of a minor, is not in itself the controlling consideration in favor of the father (*Blanco* v. *Hernández,* 32 P.R.R. 20), keeping in mind, however, the moral condition afore-stated, as well as the fact that the father has a veteran income and a pension for physical disability, that he is the owner of the farm (house and lot) where he lives that he has a home properly established, that his wife wishes to have this minor as her own daughter, all such facts taken together, warrant that law and equity, which are the main safeguards of the minor's welfare and happiness be tilted, in view of the preponderance of the evidence, in favor of plaintiff herein."

Defendant, Aleja Torres, has appealed to this Court and assigns as only error, the following: "The trial court committed manifest error of law in weighing the evidence and concluding that the minor's welfare is better secured by living with her stepmother and her father, who hardly know her and not with her own mother and her own grandmother with whom she has lived since her birth, it being axiomatic that ordinarily no one looks after a minor with greater care and love than his own mother. *Rodríguez* v. *Pagán,* 67 P.R.R. 321–325."

■ At the outset, we find it necessary to point out that from the transcript of the evidence there appear certain facts, as disclosed by uncontroverted evidence, which were not covered or adequately stated in the findings of the trial court. It is true that some time after the child's mother returned from the United States, in September 1949, and after the child was born, the mother, Leonor Roche, lived in public concubinage with a policeman, who was married to another person, in the very house where the girl lived. This fact was the essential basis for the decision of the trial court which took the view that if the minor continued to live with her mother and grandmother, she would be receiving corrup-

tive examples contrary the good habits, and would be living in an immoral environment. But it appears from the whole evidence, in an uncontroverted manner, that Leonor and the policeman had sexual relations and lived in concubinage for a period of six months only. Although a child who also lives with the defendants was born from those relations, yet at the time the petition was filed and during all the stages of this proceeding, Leonor no longer lived in concubinage with the policeman. The trial court erred also in concluding that "there has been no proof that the codefendant gives her daughter such maternal love and care." There was evidence on the part of the defendant to the effect that Leonor Roche habitually treated her daughter with love and affection. That fact was not overcome, as believed by the trial court, merely because it was the grandmother and not Leonor, who provided for most of the minor's expenses or because Leonor left for the United States and returned four months later, or because she did not work outside of her house and was engaged only in housekeeping, nor was it overcome by the fact that the mother had lived in concubinage with a policeman for six months.

■■ As to the income of the minor and her grandmother, the evidence showed that petitioner himself, father of the child, sent her $10 monthly and that, petitioner being an ex soldier or disabled veteran, the minor, as his daughter, had begun to receive the sum of $19 monthly from the Government of the United States, since the month prior to the hearing. The minor's grandmother received besides $83 monthly from her other sons, brothers of Leonor.

It is well known that the State has the power of "parens patriae" with respect to children, for the purpose of promoting their welfare as human beings and as potential citizens, and of insuring the most adequate environment possible for the development of their personality. The concept of the welfare of the minors responds to, and is a function of, a multiplicity of factors of a moral, psychic, cultural

and economic character. No isolated factor or element is exclusive or controlling; the circumstances of each particular case must be considered as a whole. In the case of a girl of tender age, such as the child involved in this suit, an environment of love, affection and understanding is of essential importance for her welfare and for an adequate and harmonious development. The mother is in a better and preeminent position to furnish that love and that affectionate care. This is why the rule should prevail that, in cases of children, the courts should prefer, as a general rule, to award the custody of the child to the mother, since, ordinarily, no one loves or cares for a minor better than his own mother, except when exceptional circumstances justify depriving the mother of such custody. *Santos* v. *Berdecía,* 73 P.R.R. 713; *Rodríguez* v. *Pagán,* 67 P.R.R. 321; *Fernández* v. *Martínez,* 59 P.R.R. 548.

■ In the case at bar there are no truly exceptional circumstances which justify depriving the child in question of the custody of her mother. The fact that she lived, *previously,* in concubinage with another man, in the same house with her daughter, does not imply the existence of, or the probability that there might exist in the future, such an atmosphere of corruption and immorality that the moral personality of the girl would be jeopardized enough to justify depriving the mother of her custody. In *Fernández* v. *Martínez, supra,* the father of a child of tender age presented a petition for habeas corpus against the mother, alleging, essentially, that she had been living in concubinage with another man in the same house where the boy lived. It was held that, especially in view of the fact that she had stopped living in concubinage with the other man several months before the trial, the minor should remain under the custody of the mother, and that the petition for a writ of habeas corpus should be dismissed.

■ As to the economic factor, even assuming that in the case at bar the father is in a relatively better financial

condition than the mother, it has not been proved that the contrast in the economic situation of both is so notable or so extreme, or that the mother lives in such indigence or poverty that the custody should be transferred from the mother to the father. *Santos* v. *Berdecía, supra.* The factor of maternal love is of greater importance in this case than financial condition, especially in view of the fact that the child and the mother are in a relatively good economic position. *Santos* v. *Berdecía, supra.*

The judgment appealed from will be reversed and another entered instead, dismissing the petition for habeas corpus, with costs.